ALD-085                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2324
_____

ROBERT HANKINS,
                            Appellant

v.

JOHN E. WETZEL, Secretary of the Penn. Dept. of Corrections; SHIRLEY MOORE-
SMEAL, Acting Commissioner of the Penn. Dept. of Corrections; MARIROSA LAMAS,
Superintendent at SCI Rockview; ROBERT MARSH, Deputy Superintendent; JEFFERY
HORTON, Deputy Superintendent; TIM MILLER, Program Manager; WILLIAM
WILLIAMS, (Ted) Medical Director; DANIEL FOX; AMY NIXON; BRADLEY
NEWTON; JEFFREY WITHERITE; MICHAEL BELL, Grievance Officer; DORINA
VARNER; KURT GRANLUND; BRIAN THOMPSON, Deputy Supt. at SCI Rockview;
JEFFREY RACKOVAN; GEORGE SNEDEKER; JULIE PENSIERO/KOLTAY;
JEREMY TIPTON; JOHN GRICE; JOHN GRAHAM; SHARON CLARK; STEWART
BOONE; FRANCIS M. DOUGHERTY; BEATRICE RIVELLO; BUREAU OF
HEALTH CARE SERVICES; JOHN KNIGHT; JANE DOES Nurses at SCI Rockview
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-11-cv-00953)
District Judge Honorable Richard P. Conaboy
_____

Submitted for Possible Dismissal for Jurisdictional Defect,
Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B),
or Summary Action Under Third Circuit LAR 27.4 and I.O.P. 10.6
December 17, 2015

Before: AMBRO, SHWARTZ and GREENBERG, Circuit Judges

(Opinion filed: January 6, 2016)

—————

OPINION[*]

—————

PER CURIAM

Pro se appellant Robert Hankins ("Hankins") appeals from the judgment of the

United States District Court for the Middle District of Pennsylvania in his civil rights

case. As the appeal does not present a substantial question, we will summarily affirm the

decision of the District Court.

I.

Hankins is a state prisoner currently housed at SCI-Huntingdon and previously

housed at SCI-Rockview. During his time at SCI-Rockview, Hankins was repeatedly

placed in the Restricted Housing Unit ("RHU") and on a restricted list due to his conduct.

Hankins filed an amended civil rights complaint against members of the Pennsylvania

Department of Corrections ("D.O.C."),[1] naming various SCI-Rockview administrators

and staff as defendants. For brevity's sake, we will refer to these defendants as the

"D.O.C. Defendants."

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Defendants Bureau of Healthcare Services; D.O.C. Secretary John Wetzel; Deputy Secretary Shirley Moore Smeal; Regional Staff Assistants Brad Newton and Jeffrey Witherite; Grievance Officers Michael Bell and Dorina Varner; and Julie Pensiero/Koltay and Jeremy Tipton were dismissed over the course of motions practice. Hankins also named a set of Jane Doe nurses, but their identities were never clarified and so were dismissed.

2

Hankins raised numerous claims, some of which were dismissed by the District Court on motion of the D.O.C. Defendants, and others which were dismissed over the course of discovery. The District Court allowed several of Hankins's claims to go forward, namely that: regulations unconstitutionally prevented him from buying and/or receiving outside publications while housed in the RHU; he was subjected to retaliation for pursuing his legal remedies; and his incoming mail was interfered with. The D.O.C. defendants filed a motion for summary judgment, which the Court granted. Hankins appeals from that order.[2]

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's order granting summary judgment.[3] See Young v. Martin, 801 F.3d 172, 177 (3d Cir. 2015). A district court may grant summary judgment only when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making this analysis, a

---

[2] This case was initially listed for possible dismissal due to a jurisdictional defect. The District Court's order granting summary judgment was entered on March 27, 2015. Hankins filed a document on April 17, 2015, called "Objections," and then filed his notice of appeal on May 18, 2015. The District Court construed the "Objections" as a motion for reconsideration and denied it on November 2, 2015. Because the document was not a clear motion for reconsideration, Hankins's notice of appeal appeared untimely, but was, in fact, timely. Hankins did not appeal from the District Court's November order. See Fed. R. App. P. 4(a)(4)(B)(ii). Accordingly, this Court has jurisdiction over the order granting summary judgment, but not the order denying reconsideration.

3

district court must credit the evidence of the non-moving party, and draw all justifiable inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A mere "scintilla of evidence in support of the [non-moving party]'s position will be insufficient" to create a genuine issue of fact. Id. at 252. The non-moving party "must show where in the record there exists a genuine dispute over a material fact." See Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007). The non-moving party cannot rest on his complaint, but must point to affidavits, depositions, interrogatory answers, and/or any admissions in establishing that there are material, disputed facts. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

## A. First Amendment Claim

The District Court correctly entered summary judgment on Hankins's First Amendment claim. Where a prison regulation imposes restrictions on an inmate's constitutional rights, that regulation is valid only if "it is reasonably related to legitimate penological interests." See Turner v. Safley, 482 U.S. 78, 89 (1987). Turner sets forth four factors for courts to consider when determining if a prison regulation is in fact reasonable: (1) a valid, rational connection between the regulation and the legitimate, neutral governmental interest; (2) any alternative means of exercising the infringed right; (3) the burden that the accommodation imposes on prison resources; and (4) any readily available alternatives existing that would fully accommodate the inmate's rights with

---

[3] We may summarily affirm a decision of the District Court if the appeal does not raise a substantial issue. 3d Cir. LAR 27.4; I.O.P. 10.6.

little cost to legitimate penological interests. See Sharp v. Johnson, 669 F.3d 144, 156 (3d Cir. 2012). The prison has the burden of demonstrating the first factor, and if it meets that burden, we consider the three other factors. Id. Ultimately, the inmate bears the burden of showing that the regulation is unreasonable. Id.

Hankins specifically alleged that his First Amendment rights were violated by SCI-Rockview's restrictive publication policies. The first policy stated that books could not be purchased on the behalf of RHU prisoners, and the second required newspapers to be exchanged on a one-for-one basis. These policies were changed after Hankins filed the current lawsuit.

While the defendants changed the policies, they defended the initial, more restrictive policies as legitimate under Turner, and cited Beard v. Banks, 548 U.S. 521 (2006), and Iseley v. Beard, 841 A.2d 168 (Pa. Commw. Ct. 2004), to support their position. Both cases upheld a more restrictive publication policy than what Hankins challenged. Regarding the first Turner factor (and citing Iseley), the D.O.C. defendants argued that there were legitimate, neutral governmental interests regarding the publication regulations: reducing the risk of flammable materials; limiting an inmate's ability to hide or trade prison contraband; limiting available resources for potential weapons; and providing a form of non-violent behavior modification. They submitted disciplinary reports documenting Hankins's many outbursts and threats in support of these arguments. They then pointed to alternative means for Hankins and other prisoners to exercise their rights under the second Turner factor. They noted that prisoners

5

received publications from within the prison; were allowed to keep a copy of a religious text; received materials from pre-existing subscriptions; were allowed to renew newspaper subscriptions; and were allowed to have one newspaper at a time. Regarding the third Turner factor, the defendants argued that the burden that Hankins's accommodation request posed a danger to correctional staff and inmates. They provided evidence documenting his history of threatening staff, throwing bodily fluids on staff, assaulting staff, and screaming obscenities. The defendants did not squarely discuss the fourth Turner factor. However, the District Court stated that the defendants had demonstrated that "there was an absence of available ready alternatives."

Hankins did not submit evidence that established a genuine dispute over any material fact. Hankins argued that Beard supported his position, but he read the case incorrectly. In Beard, the Supreme Court upheld a blanket ban of publications - a more severe policy than what Hankins challenged here. See Beard, 548 U.S. at 525-26. Hankins also contended, without any support, that because a prior prison and the next prison he was housed at gave him legal exemptions, that SCI-Rockview should have given him the same privilege. Ultimately, we give state prison officials deference in making such decisions. See Turner, 482 U.S. at 90. As such, the defendants were entitled to summary judgment.

## B. Retaliation Claims

The District Court correctly entered summary judgment on Hankins's retaliation claims because he did not provide evidence to establish a causal link between the exercise

6

of his rights and the disciplinary actions taken against him and did not show that his mail was tampered with. In order to succeed in a retaliation claim, a plaintiff must establish three elements. First, he must demonstrate that his conduct was constitutionally protected. Then, he must show retaliatory action "sufficient to deter a person of ordinary firmness from exercising his constitutional rights[.]" Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015) (citing Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). Finally, he must establish a causal link between his constitutionally protected conduct and the adverse action taken against him. Id. In the prison context, the plaintiff has the "initial burden of proving that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333.

Hankins alleged that he was retaliated against because he exercised his right to pursue legal remedies. He stated that: SCI-Rockview medical staff ignored his requests to trim his toe-nails, for sensitive toothpaste, and for replacement eyeglasses; he was denied permission to purchase or receive religious and non-religious publications; and he was prevented from receiving incoming mail and newspapers. Hankins also alleged that he was prevented from accessing his legal property and was improperly placed on total movement restriction.

In their motion for summary judgment, the defendants most explicitly pointed to record evidence regarding causation. First, regarding Hankins's medical retaliation claims, they noted his medical requests, while delayed, were in fact complied with. The delays were due to D.O.C. bureaucratic requirements and restrictions. Next, regarding

7

his publications retaliation claim, the defendants noted that the publication policies at issue existed before Hankins was transferred to SCI-Rockview, and so that applying the policies to him were not retaliatory. Next, the defendants argued that Hankins did not adequately define his mail retaliation claim, but all the same, pointed to record evidence showing that he received at least six letters from an attorney and letters from his sister, and that he has been able to successfully access the courts with his filings. Regarding his legal property retaliation claim, the defendants noted that under D.O.C. policy, Hankins had access on a monthly basis to his legal property, and that in practice, his requests to access that property was granted. Finally, regarding his restricted movement claim, the defendants pointed to the fact that Hankins had a history of activities restrictions to establish that placing him on total movement restriction was not unwarranted.

Despite all of the evidence he provided, Hankins did not establish a genuine dispute over any material fact. He did not point to any facts actually raising a genuine issue of fact regarding retaliatory motives on the part of the defendants. Accordingly, the defendants were entitled to summary judgment.

For the reasons stated above, we will summarily affirm the District Court's decision.